UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| BOJAN PANIC, | ) | 21-07028 |
| Debtor. | ) | |
| | ) | Judge Jacqueline P. Cox |
| ———————————————— | ) | |
| | ) | |
| HITACHI CAPITAL AMERICA CORP., | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Adversary No.  21-00175 |
| | ) | |
| BOJAN PANIC, | ) | |
| Defendant. | ) | |

## **NOTICE OF MOTION**

TO:   Office of the U.S. Trustee            Timothy R. Herman
     219 S. Dearborn                          Clark Hill PLC
     8th Floor                                     130 E. Randolph Street
     Chicago, Illinois 60603                  Suite 3900
                                                   Chicago, IL 60601

PLEASE TAKE NOTICE that on November 9, 2021, at the hour of 1:00 P.M.,  or as soon thereafter as counsel may be heard, the undersigned will appear before the Honorable Jacqueline P. Cox, or any other judge sitting in her place, and shall then and there present the attached Motion to Dismiss Plaintiff's First Amended Complaint, which is hereby served upon you.

**This motion will be presented and heard electronically using Zoom for government.** No personal appearance in court is necessary or permitted.  To appear and be heard on the motion, you must do the following:

**To appear by video**, (1) use this link: https//www.zoomgov.com/. (2) enter the meeting ID 161  2732  896. (3) enter passcode 778135.

**To appear** by telephone, (1) call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. (2) enter the meeting ID 161 2732 896. (3) Enter passcode 778135.

When prompted, identify yourself by stating your full name.

To reach Judge Cox's website go to www.ilnb.uscourts.gov  and click on the tab for Judges.

If you object to this motion and want it called on the presentment date above, you may file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may call the matter regardless.

Dennis M. Sbertoli ARDC 3128965
P.O. Box 1482
La Grange Park, Illinois  60526
(708) 579-9724
(708) 579-1934 Fax
dsbert4978@aol.com
Panic\Ads Hitachi\M2d-Nom.wpd

## CERTIFICATE OF SERVICE

I, Dennis M. Sbertoli, an attorney, hereby certify that I have on October 29, 2021, caused a true and correct copy of the foregoing Notice and attachment referred to therein to be served upon the parties to whom this Notice is directed at their respective addresses by United States mail postage prepaid or via the Court's ECF notice system.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                    )
    BOJAN PANIC,                     )        21-07028
              Debtor.    )
_____  )        Judge Jacqueline P. Cox
                                          )
HITACHI CAPITAL AMERICA CORP.,            )
          Plaintiff,             )
                                          )
      -vs-                         )        Adversary No.  21-00175
                                          )
BOJAN PANIC,                              )
          Defendant.             )

MOTION TO DISMISS
Bankruptcy Rule 7012 (b)(6)

Now comes the Defendant, Bojan Panic, (PANIC) by his attorney, Dennis M. Sbertoli

and as and for his Motion to Dismiss the First Amended Complaint To Determine

Dischargeability, submits the following;

FACTS COMMON TO ALL COUNTS

1. Allegations contained in Plaintiff's section titled "Facts Common to All Counts" are

substantially identical to the same section of its original Complaint. A copy of Plaintiff's First

Amended Complaint is attached as Exhibit A.

2. Plaintiff incorporates, by reference, all of its common allegations into its principal

Count.

COUNT I
523(a)(6)

3. The Plaintiff has filed a single Count Complaint alleging claims arising under

Bankruptcy Code Section 523(a)(6).

4. The Plaintiff has alleged that PANIC is the guarantor on a debt due Plaintiff from Millennium Logistics Inc., to Hitachi.

5. As with its original Complaint, each and every allegation is made *Upon information and belief.*

6. Additionally, Plaintiff offers no specific facts supporting its allegations.

ARGUMENT

Bankruptcy Rule 7009 adopts the heightened pleading standard from F.R.C.P., 9(b) which requires special matters to be pled with greater specificity. The Court in *In re: Kanaley,* 241 B.R. 795, S.D. New York, 1999 stated "to pass muster under the rule governing averments of fraud or mistake, allegations in a complaint must specify the time, place, speaker and content of the alleged fraud of misrepresentation so that defendant's intent to defraud is evident in the complaint. " The Court further cited *Segal v. Gordon,* 467 F.2d 602 (2nd Cir. 1972) for the proposition that pleadings cannot be based on information and belief. To plead an exception to this rule would require the pleader to set forth facts which serve as a foundation for the belief. Plaintiffs have not done so.

In essence, pleading, on information and belief, is like stating "I'm not sure what happened, but this is what I think happened." Clearly not sufficient to meet the Court's heightened pleading standards.

In paragraphs 23, 24, 25 and 26 Plaintiffs allege, "upon information and belief" that Panic knows the party to whom the truck was transferred or sold[1]; that Panic refuses to disclose the name of the party in possession of the truck; that Panic knows a failure to return the truck will

---

[1]It is interesting to note that nowhere in its Complaint does Plaintiff specifically allege that panic "transferred" the truck to anybody.

cause Hitachi significant injury and that Panic's actions are willful and malicious with intent to cause Hitachi injury. Nowhere does Plaintiff set forth any specific facts to support its beliefs. In the case at hand PANIC was simply a guarantor of a corporate debt to Hitachi.

To state a claim under Section 523(a)(6) a plaintiff must state an injury caused by the Debtor willfully and maliciously. *First Weber Group, Inc. V. Horsfall*, 738 F3d. 767 (7th Cir. 2013). For purposes of subsection (a)(6) willfulness entails a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Gerard v. Gerard*, 780 F3d. 806 (7th Cir. 2015). This requires that the Debtor actually intended to harm the plaintiff and not merely that the Debtor acted intentionally and the plaintiff was harmed as a result. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). The standard set forth in *Geiger* would require a showing the Debtor intended the consequences of his actions.

In the instant situation Hitachi has alleged no specific facts to suggest Debtor intended to inflict a harm onto Hitachi.

### Conclusion

It emerges as patently clear that Plaintiff's Complaint is devoid of requisite factual allegations sufficient to state a claim upon which relief can be granted.

Wherefore, Defendant Bojan Panic respectfully requests that this Court Dismiss Plaintiff's Complaint at Plaintiff's costs.

Respectfully submitted,

Dennis M. Sbertoli
ARDC #3128965
PO Box 1482
La Grange Park, IL 60526
(708) 579-9724
dsbert4978@aol.com
Panic\AdsHitachi\M2D-AmendCpt.wpd

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| BOJAN PANIC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | No. 21-07028 |
| | ) | |
| | ) | |
| HITACHI CAPITAL AMERICA CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 21-00175 |
| vs. | ) | |
| | ) | |
| BOJAN PANIC, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY
## OF INDEBTEDNESS PURSUANT TO 11 U.S.C. § 523(a)(6)

NOW COMES the Plaintiff, Hitachi Capital America Corp. by and through its attorneys, Clark Hill PLC, and for its Complaint against defendant Bojan Panic and states as follows:

### PARTIES

1.     Plaintiff Hitachi Capital America Corp. ("Plaintiff" or "Hitachi") is a foreign corporation, duly organized and existing under the laws of the State of Delaware, authorized to conduct business in the State of Illinois and maintains an office for the transaction of business at 800 Connecticut Ave, Norwalk, Connecticut.

2.     Upon information and belief, defendant Bojan Panic ("Mr. Panic" or the "Debtor") was and is a resident of the State of Illinois, residing at 1196 Colfax Avenue, Des Plaines, Illinois.

**JURISDICTION AND VENUE**

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §157(a), (b) and §1334(b).  Venue is proper in this district under 28 U.S.C. §1409.

4.      This adversary proceeding is a core proceeding as defined by 28 U.S.C §157(B)(2)(I) in that it seeks a determination of the dischargeability of particular debts pursuant to 11 U.S.C. §523(a)(6) which are owing to Plaintiff.

**FACTS COMMON TO ALL COUNTS**

5.      Mr. Panic was the President of non-party Millennium Logistics Inc. ("Millennium").

6.      Millennium was an Illinois corporation, maintaining a principal place of business at 1196 Colfax Ave, Des Plaines, Il.  Its current corporate status is "dissolved".  A copy of the results from a search of the Illinois Secretary of State's Office reflecting same is attached hereto as Exhibit "A".

7.      On or about August 9, 2018, Millennium entered into a Motor Vehicle Security Agreement (the "Agreement") with Hitachi.  A true copy of the Agreement is attached to and incorporated into the Complaint as Exhibit "B".

8.      The Agreement was signed on behalf of Millennium by Mr. Panic as an Officer.

9.      As further consideration and to induce Hitachi to enter into the Agreement, Mr. Panic executed a Guaranty in favor of Hitachi, whereby he irrevocably and unconditionally guaranteed to Hitachi the prompt payment and performance of all present and future obligations owing by Millennium to Hitachi.  A true and correct copy of the Guaranty is attached to and incorporated into the Complaint as Exhibit "C".

10.     In accordance with the terms of the Agreement, Millennium agreed to pay to Hitachi the sum of $172,480.32 by making seventy-two (72) consecutive monthly payments of

2

$2,395.56, commencing on September 9, 2018 and continuing monthly thereafter until paid in full.

11.     As security for the repayment of the indebtedness due under the Agreement, Millennium granted to Hitachi a security interest in and to a 2019 International Prostar VIN #3HSDZAPR3KN045047 (the "Truck").

12.     Hitachi perfected its security interest in the Truck by notating its lien on the Truck's Certificate of Title.  A true and correct copy of the Certificate of Title is attached to and incorporated into the Complaint as Exhibit "D".

13.     Beginning in June 2019 the account fell into default and Hitachi began collection efforts.  Numerous calls and emails were made to Mr. Panic.  After repeated broken promises, Mr. Panic had brought the account current in November 2019.

14.     Thereafter, Millennium defaulted by failing to make the January 9, 2020, installment or any other monthly installments as they came due.

15.     As a result of the default, demand was made upon Millennium and Mr. Panic to cure the default.

16.     Despite numerous demands both Millennium and Mr. Panic failed to cure the defaults.  Accordingly, Hitachi terminated the Agreement, accelerated the indebtedness due thereunder and demanded possession of the Truck.

17.     Since being assigned the account in early 2020, Hitachi's agents have been unable to locate the Truck.  Mr. Panic has not returned any messages left by Hitachi or its agents and has failed to assist in any way with the return of the Truck.

18.     On or about June 2, 2021, Mr. Panic filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.

3

19.     In his bankruptcy schedules Mr. Panic has indicated that the "location of the Truck is unknown to Debtor". (ECF Doc #1, pg. 51)

20.     Upon information and belief, in addition to Millennium Logistics, Mr. Panic is an affiliate, owner, shareholder or officer of the following companies each of which utilize trucks and trailers in the operation of their business: RR Freight Inc., Master Group, Inc. and Ristic Trucking Incorporated.

21.     According to Mr. Panic's schedules each those entities are a co-debtor and each share the same address as Mr. Panic's home residence.

## COUNT ONE
### 11 U.S.C. §523(a)(6)

22.     Plaintiff repeats each and every allegation asserted in paragraphs "1" through "21", as if more fully set forth herein.

23.     Upon information and belief, as the President of Millennium, Mr. Panic knows the party to whom the Truck was transferred or sold.

24.     Upon information and belief, Mr. Panic refuses to disclose the name of the party in possession as he has profited from the transfer and/or will continue to profit.

25.     Upon information and belief, Mr. Panic knows that the failure to return the Truck will cause Hitachi significant injury.

26.     Upon information and belief, the actions taken by Mr. Panic are willful and malicious and made with the intent to cause Hitachi injury.

27.     As a result of Mr. Panic's actions, Hitachi has suffered damages in a sum of $135,643.94.

28.     Accordingly, as a result of Mr. Panic's actions, the debt owing to Plaintiff is non-dischargeable under section 523(a)(6) of the Bankruptcy Code.

4

**WHEREFORE,** Plaintiff Hitachi Capital America Corp. demands judgment against Defendant Bojan Panic: (a) determining that the Plaintiff's claims against the Defendant Bojan Panic be non-dischargeable under section 523(a)(6) of the Bankruptcy Code and awarding Plaintiff its costs and attorneys' fees, and such other relief as this court deems just and equitable.

Respectfully submitted,

HITACHI CAPITAL AMERICA CORP.

By: /s/ Samuel J. Tallman

One of Its Attorneys

Samuel J. Tallman (#6322843)
CLARK HILL PLC
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 517-7515 | F: (312) 985-5542
stallman@clarkhill.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on **October 20, 2021**, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties and/or their counsel of record registered to receive electronic notice *via* the Court's CM/ECF System.

Dennis M. Sbertoli                          Office of the U.S. Trustee
P.O. Box 1482                               219 South Dearborn Street, 8th Floor
La Grange Park, Illinois 60526              Chicago, Illinois 60603
P: (708) 579-9724 | F: (708) 579-1934
dsbert4978@aol.com
*Counsel for Debtor*

/s/ Samuel J. Tallman

36288\420361\264406780

# EXHIBIT A



Office of the Secretary of State Jesse White
CYBERDRIVEILLINOIS.COM

# Corporation/LLC Search/Certificate of Good Standing

## Corporation File Detail Report

| | |
|---|---|
| File Number | 65544423 |
| Entity Name | MILLENNIUM LOGISTICS INC. |
| Status DISSOLVED | |
| Involuntary Dissolution on Tuesday, 10 November 2020 | |

### Entity Information

| |
|---|
| Entity Type CORPORATION |
| Type of Corp DOMESTIC BCA |
| Incorporation Date (Domestic) Tuesday, 24 April 2007 |
| State ILLINOIS |
| Duration Date PERPETUAL |

**EXHIBIT A**

## Agent Information

Name
SREJOVIC ACCOUNTING SERVICES,

Address
2340 S RIVER RD STE 208
DES PLAINES , IL 60018

Change Date
Monday, 14 January 2019

## Annual Report

Filing Date
00/00/0000

For Year
2020

## Officers

President
Name & Address
BOJAN PANIC 1196 COLFAX AVENUE DES PLAINES 60016

Return to Search

Reinstate your Dissolved Corporation

This information was printed from www.cyberdriveillinois.com, the official website of the Illinois Secretary of State's Office.        Sat Aug 14 2021

# EXHIBIT B

Application #: 310712

# MOTOR VEHICLE SECURITY AGREEMENT

This Motor Vehicle Security Agreement ("Agreement") dated as of **08/09/2018**, by and between Hitachi Capital America Corp. ("Creditor"), a Delaware corporation having a place of business at 800 Connecticut Ave., 4th Floor North, Norwalk  CT  06854-1631; and **MILLENNIUM LOGISTICS INC.** (separately and together, the "Buyer") having an address at 1196 Colfax Ave, Des Plaines, IL  60016-3443; and with Buyer and Creditor, collectively, the "Parties").

1. GRANT OF SECURITY INTEREST: Buyer grants to Creditor a security interest in the vehicle(s) being purchased, listed below (collectively the "Vehicle(s)"), and any attachments, additions, accessories and equipment then installed in the Vehicle(s) and all replacement parts and all proceeds thereof (collectively the "Collateral").

    Description of Collateral:

**(1) 2019 INTERNATIONAL PROSTAR  3HSDZAPR3KN045047**

Name and Location of Dealer: RUSH TRUCK CENTERS OF IL , dba HOUSE OF TRUCKS, 7910 JOLIET ROAD, WILLOWBROOK,  IL 60527

**GARAGING ADDRESS:** 1196 Colfax Ave , Des Plaines, IL 60016-3443

2. OBLIGATIONS SECURED: Each item of Collateral set forth above in Paragraph 1 secures not only the specific amount which Buyer promises to pay pursuant to Paragraph 3, but also all other present and future indebtedness or obligations of Buyer to Creditor and Creditor's affiliates of every kind and nature (collectively the "Indebtedness").
3. PROMISE TO PAY; TERMS AND PLACE OF PAYMENT: Buyer promises to pay the Indebtedness to the Creditor at the rates and upon such terms as provided herein. Buyer, having agreed to purchase the Collateral, desires to finance a portion of the purchase price of the Collateral from Creditor, under the terms and provisions of this Agreement, and agrees with the Creditor as follows:

Description of Trade-in(s) if any:

Gross Allowance ................................................................$0.00

Less Amount Owing To: _____  ................$0.00

Trade-In (Net Allowance) ....................................................$0.00

| | | |
|---|---|---|
| A. | CASH SALE PRICE OF VEHICLE(S) ........................................ | $120,832.80 |
| | LICENSE, TAXES and OFFICIAL FEES ................................. | $490.00 |
| | OTHER FEES (FET, Insurance or Warranty fees) ..................... | $13,572.20 |

TOTAL COST .......................................................................................................... $134,895.00

| | | | |
|---|---|---|---|
| B. | (a) Cash Down Payment ........................................... | $0.00 | |
| | (b) Net Trade-In Allowance (See above) ..................... | $0.00 | |
| | (c) Other Credits.................................................... (Describe): | $_____ | |
| | TOTAL DOWN PAYMENT ....................................... | $0.00 | |
| C. | DIFFERENCE BETWEEN A & B ................................... | $134,895.00 | |

| | | |
|---|---|---|
| D. | **AMOUNT FINANCED / Credit provided to you or on your behalf:** Difference between A & B ........................................... | **$134,895.00** |
| E. | Finance Charge (The total amount of interest you will pay) ..................... | $37,585.32 |
| F. | Total Amount of Payments (D+E) ................................ | $172,480.32 |
| G. | Total Sale Price (B+F) .............................................. | $172,480.32 |

**PAYMENT SCHEDULE:** Buyer promises to pay Creditor the AMOUNT FINANCED (Item D above) PLUS interest calculated at a rate per annum of **8.46%** (the "Indebtedness")until all amounts due Creditor hereunder have been fully paid, with such payments to be made in installments as follows:

☒ *For equal successive monthly installments:*.................................................. (a)  The term of this obligation shall be **72** months commence on the date of delivery.  The Buyer shall pay to the Creditor 72 consecutive monthly installments of principal and interest in the amount of **$2,395.56** commencing on 09/09/2018 at which time the entire principal balance together with all accrued interest shall be due and payable, without notice or demand.

Motor Vehicle Security Agreement                    Page 1 of 5

# EXHIBIT B

*For equal successive monthly installments plus balloon:* ............................ ........ (b) The term of this obligation shall be **72** months commence on the date of delivery. The Buyer shall pay to the Creditor **72** consecutive monthly installments of principal and interest in the amount of **$2,395.56** commencing on **09/09/2018** and a final balloon installment of principal and interest of **$0.00** on **08/09/2024** at which time the entire principal balance together with all accrued interest shall be due and payable, without notice or demand.

Please check below your preferred method for receipt of monthly invoices:

☒ **Receive monthly invoices via "Auto Pay" (automatic bank deduction)**
(the ACH Sign Up Form must be completed if this option is checked)

☐ **Receive monthly invoice via mail.**

Billing Address: _____
City/State/Zip: _____
Billing Contact Name: _____
Phone Number: _____
Fax Number: _____
E-Mail Address: _____
Guarantor Home Number: _____
Guarantor Cell Number: _____
Guarantor E-Mail Address: _____

4. **USE OF COLLATERAL:** Buyer represents, warrants and agrees that: (a) the Collateral will be used 100% for business and commercial purposes and not for personal, family or household purposes; (b) the Collateral will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Buyer's business and in conformity with all applicable governmental laws and regulations; (c) the Collateral will remain personal property and not become part of any real property; (d) Creditor may inspect the Collateral at all reasonable times and from time to time; (e) and the Collateral will not be used outside of the Continental United States. Notwithstanding the prohibition from removing the Collateral from the United States, in the event that Buyer contemplates any exporting of the Collateral (including any technology supplied as part of the Collateral), Buyer shall follow all procedures as required by the U.S. Export Administration Regulations and any related export control laws and regulations promulgated and administered by the government of any country having jurisdiction over the parties hereto or the transactions contemplated herein.

5. **PRESERVATION OF COLLATERAL:** Buyer agrees, at its own expense: (a) to do everything necessary to perfect and preserve the security interests of Creditor in the Collateral; (b) to defend any action, proceeding or claim affecting the Collateral including, but not limited to, those affecting any security interest of Creditor obtained hereunder; (c) to pay all losses, costs, expenses and damages incurred by Creditor in enforcing its rights after the occurrence of an event of default hereunder, including reasonable attorneys' fees (equal to at least 20% of all sums then owing hereunder if permitted by law); (d) to promptly pay all taxes, assessments, license fees and any indirect costs incurred including, but not limited to, storage charges, towing charges, parking charges and fines or any other public or private charges when levied or assessed against the Collateral; and (e) if a certificate of title is required or permitted by law, Buyer shall obtain and promptly deliver to Creditor the certificate, showing the security interest of Creditor.

6. **PREPAYMENT:** On the due date of any monthly payment with respect to any Vehicle(s), in addition to payment of the installment then due, Buyer may prepay the entire unpaid principal balance then due on such Vehicle(s), upon at least ten (10) days' prior written notice to Creditor. The prepayment shall be applied to the installments of unpaid principal in reverse order of maturity.

7. **BUYER'S REPRESENTATIONS AND WARRANTIES:** Buyer represents and warrants that: (a) the Collateral was delivered to and accepted by Buyer in satisfactory condition; (b) Buyer is justly indebted to Creditor for the full amount of the Indebtedness set forth herein; (c) except for the security interest granted hereby, the Collateral is free and will be kept free from all liens, claims, security interests and encumbrances; (d) no financing statement covering the Collateral or any proceeds thereof is filed or will be filed in favor of anyone other than Creditor; (e) all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this Agreement are and shall be complete and accurate in all material respects; and Buyer has full power and authority to enter into this Agreement and Buyer has taken all necessary steps to make this Agreement its valid and binding obligation.

8. **CONTINUING OBLIGATIONS:** Buyer agrees that the security interest granted by Buyer to Creditor shall remain in effect irrespective of any retaking or redelivery of the Collateral or any portion thereof and irrespective of the payment of the amount of any of the Indebtedness, so long as there are any obligations of any kind owed by Buyer to Creditor, including obligations under guarantees or assignments.

9. **OWNERSHIP; RISK OF LOSS:** Buyer agrees to pay Creditor all amounts Buyer owes under this Agreement even if the Vehicle(s) or any other Collateral or portion thereof is/are lost, stolen, damaged, destroyed or missing. Unless Buyer obtains Creditor's prior written consent, Buyer will not sell, lease, mortgage, create a lien in, transfer or otherwise dispose of the Collateral, in whole or in part. Buyer is responsible for and will pay when due all repair bills, storage bills, taxes, fines, and other charges and assessments levied on the Collateral. If Buyer fails to pay these amounts, Creditor may do so for Buyer. If Creditor pays any of these charges on Buyer's behalf, Buyer agrees to pay upon demand an administration fee of $100.00 plus any amounts Creditor may have paid on Buyer's behalf, together with interest thereon at the Default Rate defined herein below.

10. **REQUIRED INSURANCE COVERAGE:** Buyer agrees to buy and pay for comprehensive insurance coverage for the term of this Agreement, including fire, theft and combined additional insurance coverage in an amount equal to the full insurable value of the Collateral, as set forth below. Buyer may provide the insurance coverage through an existing policy owned or controlled by Buyer or through a policy obtained from an insurance company of Buyer's choice acceptable to Creditor. The insurance policy must name Creditor as loss payee. In addition, the required insurance policy must provide for 30 days advance written notice to Creditor before the insurance coverage is cancelled, modified or reduced. Buyer agrees to deliver promptly to Creditor certificates of insurance evidencing the required insurance coverage and whatever other written proof of insurance coverage Creditor requests. **NO INSURANCE IS BEING PROVIDED BY CREDITOR.**

| TYPE | AMOUNT |
|---|---|
| **Public liability and property damage** | |
| Less than 33,001 GVW    (Class 1 – 7) | $ 100,000.00  combined single limit (comprehensive automobile liability) per occurrence |
| 33,001 GVW or Greater    (Class 8) | $1,000,000.00 combined single limit (comprehensive automobile liability) per occurrence |

**Collision, fire and theft (all risk)**

Buyer's insurance information is as follows:
**INSURANCE AGENT**

Not less than the actual value of the Collateral from time to time.
with Maximum deductible of $1,000.00

**INSURANCE CARRIER**

Agent Name

Insurance Carrier

Address

Policy #

City/State/Zip

Effective Date        Exp. Date

Telephone        Fax

Contact Person

11. <u>RIGHT TO COLLECT INSURANCE PROCEEDS</u>: Buyer hereby assigns to Creditor any monies that may become payable under each such policy of insurance, including returned and unearned premiums, up to the amount of the Indebtedness. Buyer irrevocably constitutes and appoints Creditor as Buyer's attorney-in-fact: (a) to hold each original insurance policy; (b) to make, settle and adjust claims under each policy of insurance; (c) to make claims for any monies that may become payable under such policies and other insurance on the Collateral including returned or unearned premiums; and (d) to endorse Buyer's name on any check, draft or other instrument received in payment of claims or returned or unearned premiums under each policy and to apply the funds to the payment of the Indebtedness or, at Creditor's option, to the repair or replacement of the Vehicle(s). Buyer agrees to cooperate fully with Creditor in collecting insurance proceeds.

12. <u>INSURANCE CHARGES RETURNED TO CREDITOR</u>: If any charge for required insurance is returned to Creditor, it may be credited to Buyer's account or used to buy similar insurance or insurance that covers only Creditor's interest in the Collateral. If insurance charges returned to Creditor are credited to Buyer's account, they will be applied to as many of Buyer's installments as they will cover, beginning with the final installment.

13. <u>FINANCING STATEMENT</u>: Buyer authorizes Creditor to file a financing statement with respect to the Collateral, signed only by Creditor, and to file a carbon, photographic or other reproduction of this Agreement or of a financing statement. At the request of Creditor, Buyer will execute any financing statements, agreements or documents, in form satisfactory to Creditor, Creditor deems appropriate to obtain and retain a perfected security interest in the Collateral and will pay the cost of filing or recording the same in all public offices deemed necessary or advisable by Creditor. Buyer also agrees to pay all costs and expenses incurred by Creditor in conducting UCC, tax or other lien searches against the Buyer or the Collateral and such other fees as may be agreed.

14. <u>PERFORMANCE</u>: If Buyer fails to perform any of its obligations under this Agreement, Creditor may but is not required to perform same and Buyer shall immediately repay to Creditor any amounts paid by Creditor in such performance, together with interest at the Default Rate as defined herein below.

15. <u>DEFAULT</u>: Buyer is in default of its obligations under this Agreement if: (1) Buyer fails to pay any of the Indebtedness when due; (2) Buyer fails to perform any of its obligations under this Agreement or any other Agreement or debt obligation of Buyer to Creditor or Creditor's Affiliates; (3) any warranty, representation or statement Buyer made or caused to be made is false or breached; (4) the Collateral or any portion thereof is/are lost, stolen, damaged, destroyed, encumbered, levied upon, seized or attached; (5) the Collateral or Any portion thereof is/are sold or leased without Creditor's prior written permission; (6) Buyer assigns its rights under this Agreement; (7) bankruptcy or insolvency proceedings are initiated by or against Buyer; (8) Buyer is unable to pay its debts as they become due;    (9) Buyer becomes insolvent; (10) a receiver, or fiscal agent, is appointed for Buyer; (11) Buyer makes an assignment for the benefit of creditors; (12) Buyer is a corporation or partnership and the corporation or partnership dissolves, merges, consolidates or transfers a substantial portion of its property; (13) Creditor in good faith believes that the prospect of payment or performance under this Agreement is impaired; (14) there shall be a material change in the management, ownership or control of Buyer; (15) there shall occur a seizure of control, custody or possession of any Collateral by any governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder be collectively referred to as "Governmental Authority"); (16) anyone in the control, custody or possession of any Collateral or the Buyer is accused or alleged or charged (whether or not subsequently arraigned, indicted or convicted), by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); (17) Buyer fails to obtain or maintain insurance as required by Paragraph 10 of this Agreement; or (18) any guarantor, surety or endorser for Buyer, ceases to do business as a going concern or defaults in any liability or obligation to Creditor or any guaranty obtained in connection with this transaction is terminated or breached; (19) ACH is deemed Mandatory as indicated by the DIRECT PAYMENT SIGN-UP FORM – LOAN and Buyer at any time during the term of this Agreement fails to provide valid Depository Institution Information and Authorization permitting Creditor to debit a Buyer's bank account for all payments due.

16. <u>REMEDIES</u>: Waiver of any default by Creditor shall not be a waiver of any other default; all of Creditor's rights and remedies are cumulative. Upon the occurrence of an event of default, and as long as the default continues, Creditor may, at its option, with or without notice to Buyer: (a) declare this Agreement to be in default; (b) declare the Indebtedness to be immediately due and payable ("Acceleration"); (c) declare all other debts then owing by Buyer to Creditor to be immediately due and payable; (d) cancel any insurance and credit any refund to the Indebtedness; and (e) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Buyer to assemble the Collateral hereunder or the collateral of any other debt obligations of Buyer to Creditor and deliver it to Creditor at a place to be designated by Creditor which is reasonably convenient to both parties, and to lawfully enter any premises where the Collateral is located without judicial process and take possession thereof. Acceleration of the Indebtedness, if elected by Creditor, shall be subject to all applicable laws including those pertaining to refunds and rebates of unearned charges. Any property that is in or upon the Collateral at the time of repossession may be taken and held without liability until Buyer requests its return. Unless otherwise provided by law, any requirement of reasonable notice that Creditor may be obligated to give regarding the sale or other disposition of collateral will be met if such notice is mailed to Buyer at its address shown herein at least ten (10) days before the time of sale or other disposition. Creditor may buy at any sale and become the owner of the collateral. The inclusion of a trade name or division name in the identification of Buyer hereunder shall not limit Creditor's rights, after the occurrence of an event of default, to proceed against all of Buyer's assets, including those held or used by Buyer individually or under another trade or division name. In the event of a default Buyer irrevocably appoints Creditor as Buyer's attorney-in-fact to execute and endorse all title and transfer documents upon any sale of Collateral. Expenses of retaking, holding, preparing for sale, selling and the

like shall include the reasonable fees of any attorneys retained by Creditor (equal to at least 20% of all sums then owing by Buyer to Creditor, if permitted by law) and all other legal costs and expenses incurred by Creditor. Buyer expressly waives all further rights to possession of the Collateral hereunder or the collateral for any other debt obligations of Buyer to Creditor after default hereunder and all claims for injuries or damages suffered through or loss caused by any such entering and/or repossession by Creditor or its agents and representatives.

17. APPLICATION OF PROCEEDS: The proceeds of any sale of or other realization upon all or any part of the repossessed Collateral hereunder other collateral for any other debt obligations of Buyer to Creditor shall be applied in the following order: first, to pay all costs and expenses of such sale or realization, including reasonable attorneys' fees and costs and all other expenses, liabilities and advances incurred or made by the Creditor in connection therewith; second, to the payment of the Indebtedness hereunder and any other debt obligations of Buyer to Creditor, including applicable interest; and finally, to pay to the Buyer or its successors or assigns or, as a court may direct, any surplus then remaining from such proceeds. If, in the event of the sale of or any realization upon the Collateral hereunder or the collateral for any other debt obligations of Buyer to Creditor, the proceeds are insufficient to pay all amounts to which the Creditor is legally entitled, Buyer will be liable for the entire deficiency, together with interest thereon at the maximum rate allowed by law.

18. ASSIGNMENT AND CHANGES IN THIS ASSIGNMENT: Creditor may assign its interest in this Agreement and any guarantees hereof without Buyer's consent. An Assignment of this Agreement constitutes as assignment of any Guarantees hereof unless specifically indicated otherwise in writing by Creditor. Buyer agrees that it may *not* assign its rights or obligations under this Agreement. No modification or amendment of this Agreement shall be valid unless made in writing and signed by Creditor. No oral changes are binding. The term "Creditor" shall include any assignee of Creditor who is the holder of this Agreement. Buyer's obligations and liabilities hereunder to the assignee will be absolute and unconditional and will not be subject to any abatement, reduction, recoupment, defense, set-off or counterclaim available to Buyer for breach of warranty or for any other reason whatsoever. Any provisions hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable, but shall not invalidate the remaining provisions hereof. Buyer waives all exemptions to the extent permitted by law. Creditor may correct patent errors herein. All of the terms and provisions of this Agreement shall apply to and be binding upon Buyer, its heirs, personal or legal representatives, successors and assigns and shall inure to the benefit of Creditor, its successors and assigns.

19. WAIVER OF CLAIMS AND DEFENSES: To the full extent permitted by applicable law, Buyer hereby waives as to Creditor all claims and defenses which Buyer could assert against the manufacturer, seller or Creditor of the Vehicle(s) or any other aspect of the Collateral.

20. DEFAULT INTEREST: Buyer agrees to pay Creditor, upon default, interest on all sums then owing by Buyer to Creditor at the rate of 18% per annum, if not prohibited by law, otherwise at the highest rate that Buyer can legally obligate itself to pay and/or Creditor can legally collect, until paid in full. All amounts payable hereunder are payable at Creditor's address noted above or at such other address as Creditor specifies from time to time in writing.

21. LATE FEE AND SECURITY INTEREST: For each installment not paid within ten (10) days after its due date, Buyer agrees to pay to Creditor a late fee equal to 5% of such installment with such late fee not to be less than $25.00. To secure payment of the total amount due to Creditor hereunder, Creditor retains a lien on and security interest in the Collateral regardless of any retaking and redelivery of the Collateral to Buyer.

22. DISCLAIMER: There are no warranties other than those made by the manufacturer of the Collateral. CREDITOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE COLLATERAL FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Creditor shall not under any circumstances be liable for loss of anticipatory or actual profits or for consequential damages of any type whatsoever.

23. ENTIRE AGREEMENT: This Agreement contains the final, integrated understanding and agreement between the Parties concerning its subject matter. This Agreement may not be modified or amended by a further writing signed by the Parties. If this Agreement is executed by two or more Buyers, they shall be jointly and severally liable under it.

24. MAINTENANCE OF LIEN: Buyer is responsible for assuring that a lien on the Collateral in favor of the Creditor is properly recorded on any title to the Collateral and that such lien remains in full force and effect until the Indebtedness hereunder has been paid in full to Creditor.

25. PRIVACY WAIVER: For any purpose, Creditor may receive from and disclose to any individual, corporation, business, trust, association, company, partnership, joint venture, or other entity (herein collectively, the "Entity"), including, without limitation, Creditor's parent or any affiliate or any subsidiary of Creditor and any credit reporting agency or other entity whether or not related to Creditor, information about Buyer's accounts, credit application and credit experience with Creditor, and Buyer authorizes any Entity to release to Creditor any information related to Buyer's accounts, credit experience and account information regarding the Buyer. This shall be continuing authorization for all present and future disclosures of Buyer's account information, credit application and credit experience on Buyer made by Creditor, or any Entity requested to release such information to Creditor. Buyer consents to the receipt and release of all information required in order for Creditor to comply with its obligations, if any, under the USA Patriot Act.

26. GOVERNING LAW: This Agreement shall be governed by the laws of the State of Connecticut, without regard to conflict of law principles. The Parties agree that all actions or proceedings arising in connection with this Agreement may be tried and litigated in the state and federal courts located in the State of Connecticut, or, at the sole option of Creditor, in any other court in which Creditor shall initiate legal or equitable proceedings and that has subject matter jurisdiction over the matter in controversy. Buyer waives any right they may have to assert lack of personal jurisdiction, the doctrine of *forum non conveniens* or to object to venue (or to seek to transfer venue) to the extent any action or proceeding is brought in accordance with this section.

27. WAIVER OF JURY TRIAL: THE CREDITOR AND THE BUYER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY OR AGAINST EACH OTHER ON, OR IN RESPECT OF, ANY MATTER ARISING OUT OF, RELATING TO OR PERTAINING TO THIS AGREEMENT OR THE INTERPRETATION, BREACH, ENFORCEMENT OR SUBJECT MATTER HEREOF, THE RELATIONSHIP BETWEEN THE BUYER AND THE CREDITOR AND/OR ANY CLAIM OF INJURY OR DAMAGE FROM ANY OTHER RELATIONSHIP BETWEEN THE PARTIES.

28.
MISCELLANEOUS: This Agreement is for the benefit of, and may only be enforced by, the respective Parties and their successors and permitted assigns and is not for the benefit of, and may not be enforced by, any third party claiming through Buyer. This Agreement is the product of negotiations between the Parties. Each provision hereof shall be read and interpreted in accordance with its common and ordinary meaning and no ambiguity in language shall be read or interpreted strictly against either Party as the drafter thereof. All notices required or permitted under this Agreement shall be in writing and shall be deemed received if delivered personally to an officer or authorized representative of a Party, or if sent by certified mail, return receipt requested and postage prepaid, to a Party at its address noted above or to such other address for which notice has been given pursuant hereto. *Buyer hereby consents to Creditor obtaining a credit report on Buyer and any personal and/or corporate guarantors of Buyer at the time of execution hereof and semi-annually in the event of a default under this Agreement or any other obligations of Buyer to Creditor and any Guarantees therefor. Copies of this executed Agreement transmitted by facsimile transmission, email or generated through electronic signature/documentation technology shall be considered originals for all purposes*

**BY EXECUTING BELOW, BUYER CERTIFIES THAT HE/SHE/IT HAS TAKEN DELIVERY AND ACCEPTED THE VEHICLE(S) INDICATED IN PARAGRAPH 1, ABOVE.**

# EXHIBIT C

# GUARANTY

This Guaranty is made this 08/09/2018, by BOJAN PANIC         (each a "Guarantor", and together, the "Guarantor(s)", to Hitachi Capital America Corp. ("HCAC"), a Delaware corporation, having an address at 800 Connecticut Ave., 4th Floor North,, Norwalk, Connecticut 06854-1631.

GUARANTY:  In order to induce HCAC to enter into the Debt Obligation dated 08/09/2018 ("the Agreement") with MILLENNIUM LOGISTICS INC. ("Customer"), and to extend credit and advance funds to enable Customer to acquire the Collateral described therein (and/or in the Schedules thereto (which Schedules are hereinafter included in the defined term "Agreement"), and in consideration thereof, each undersigned Guarantor, as primary obligor, hereby irrevocably and unconditionally jointly and severally GUARANTEES to HCAC that the Customer will fully and promptly pay and perform all of its present and future obligations to HCAC, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, and whether originally contracted with HCAC or otherwise acquired by HCAC (the "Obligations"), together with interest thereon, if any, irrespective of any invalidity or unenforceability of any such obligation or the insufficiency, invalidity or unenforceability of any security therefor, whether now existing or hereafter incurred.

Each undersigned Guarantor consents to all the terms, covenants and conditions of this Agreement, and to any and all action that may be taken under or in respect hereof, without notice to or consent by any Guarantor.  This Guaranty is an absolute and unconditional guaranty of payment and performance, and not of collection.  Each undersigned Guarantor agrees: (1) to pay on demand all sums and charges of any kind and character whatsoever due or to become due to HCAC from the Customer and all losses, costs, expenses and damages (including reasonable attorneys' fees) which may be suffered by HCAC by reason of the Customer's default under the Agreement or any other debt obligation of customer to HCAC or default of any Guarantor without HCAC first having to proceed against the Customer or any other person, including any other Guarantor, or to liquidate any security therefor; (2) to be bound by, and on demand to pay, any deficiency established by a sale of any collateral security held with or without notice to any Guarantor.  Each undersigned Guarantor waives any right to require that any action be brought against Customer or any other person, including any other Guarantor, or to liquidate any security for any of the Obligations.  No Guarantor shall be released or discharged, in whole or in part, by HCAC's failure or delay to perfect or continue the perfection of any security interest in any property that secures the Obligations, or to protect the collateral covered by such security interest.  Each Guarantor waives:  (a) notice of acceptance of this Guaranty; (b) presentment, demand, protest, notice of protest, and notice of nonpayment or dishonor of any of the Obligations or any note or other document, instrument or agreement, signed, accepted, endorsed or assigned to HCAC by Customer, and any other demands and notices to which the undersigned may be entitled; (c) any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which any Guarantor may now or hereafter have against the Customer or any other person directly or contingently liable for the Obligations guaranteed hereunder, or with respect to the Customer's property (including, without limitation, property collateralizing the Customer's Obligations to HCAC), arising from the existence or performance of this Guaranty; (d) all exemptions and homestead laws; (e) all setoffs, offsets, counterclaims or recoupments whatsoever which may otherwise be available to Customer or any Guarantor; and (f) any and all defenses based on suretyship or any other applicable law or facts.

HCAC may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the Obligations of any Guarantor hereunder, do any of the following:  (i) renew, extend, modify, release or discharge any Obligations of the Customer or of any Guarantor (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment or performance of any of said Obligations; (ii) accept partial payment or performance of said Obligations; (iii) accept new or additional documents, instruments or agreements relating to or in substitution of this Agreement or the Obligations; (iv) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of said Obligations, or any security therefor, in any manner; (v) consent to the transfer or return of any security, and take hold of security or additional security or guarantees for said Obligations; (vi) amend, exchange, release or waive any security or guaranty; or (vii) bid and purchase at any sale of security and apply any proceeds or security, and direct the manner and order of sale.

GOVERNING LAW:  This Guaranty shall be governed by the laws of the State of Connecticut, without regard to conflict of law principles.  The Parties agree that all actions or proceedings arising in connection with this Agreement may be tried and litigated in the state and federal courts located in the State of Connecticut, or, at the sole option of HCAC, in any other court in which HCAC shall initiate legal or equitable proceedings and that its subject matter jurisdiction over the matter in controversy.  Guarantor(s) hereby waive any right they may have to assert lack of personal jurisdiction, the doctrine of *forum non conveniens* or to object to venue (or to seek to transfer venue) to the extent any action or proceeding is brought in accordance with this section.

WAIVER OF JURY TRIAL:  HCAC and the Guarantor(s) HEREBY WAIVE TRIAL BY JURY in any action, proceeding or counterclaim brought by or against each other on, or in respect of, any matter arising out of, relating to or pertaining to this Guaranty or the interpretation, breach, enforcement or subject matter hereof, the relationship between the Customer and HCAC and/or any claim of injury or damage from any other relationship between the parties.

MISCELLANEOUS:  Any notice to be given to the Guarantor(s) may be sent by mail or other form of delivery to the address provided above. Guarantor(s) hereby consent(s) to HCAC obtaining a consumer credit report or business credit report for the purpose of evaluating the creditworthiness of the Customer in connection with an application for commercial/business credit.  In addition, in the event of a default by the Customer and Guarantor(s) under any of its present or future debt obligations to HCAC, the undersigned Guarantor(s) consent(s) to HCAC obtaining semi-annual consumer or business credit reports of the Guarantor(s) after the date of default until such time as all outstanding indebtedness of the Customer and Guarantor to HCAC has been satisfied.  Copies of this executed Guaranty may be executed in counterparts with facsimile transmitted, email or documents generated by e-signature technology to be considered originals for all purposes.

[SIGNATURES ON THE FOLLOWING PAGE]



# EXHIBIT C

**NOTE: Dealer MUST witness customer signature and sign as Witness**
**OR customers signatures MUST be Notarized by a Notary Public**

Individual Guarantor(s):

Name:      BOJAN PANIC
Address:   1196 Colfax Ave
           Des Plaines, IL  60016-3443

Signature: _____, Individually

Date: _8 – 9 – 1 8_

WITNESS: (Dealer OR Notary)

Signature: _____

Name (print): _Renee Russo_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT D

# STATE OF ILLINOIS

## CERTIFICATE OF TITLE OF A VEHICLE

| | | | |
|---|---|---|---|
| VEHICLE IDENTIFICATION NO. 3HSDZAPR3KN045047 | YEAR 2019 | MAKE INTERNATIONAL | MODEL | BODY STYLE TRACTR TK | TITLE NO. 18263635236 |

3HSDZAPR3KN045047

| DATE ISSUED 09/20/18 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED 08/10/18 NEW | TYPE TITLE ORIGINAL |

LEGEND(S)

MAILING ADDRESS

MILEAGE NOT REQUIRED

HITACHI CAPITAL AMERICA CORP
800 CONNECTICUT AVE
NORWALK CT 06854-1631

OWNER(S) NAME AND ADDRESS
MILLENNIUM LOGISTICS INC
1196 COLFAX DR
DES PLAINES IL 60016

FIRST LIENHOLDER NAME AND ADDRESS
HITACHI CAPITAL AMERICA CORP
800 CONNECTICUT AVE
NORWALK CT 06854-1631

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

By _____ Signature of Authorized Agent _____ Date _____
Firm Name _____
By _____ Signature of Authorized Agent _____ Date _____
Firm Name _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that this odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

*If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that this vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application.

ODOMETER READING _____ NO TENTHS
Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____
DATE OF SALE _____
Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named herein is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.
R0250857

_Jesse White_

**EXHIBIT D**